**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, <br><br> Plaintiff, <br><br> vs. <br><br> BEAUFORT COUNTY, and ERIC GREENWAY, Director of the Beaufort County Community Development Department, <br><br> Defendants. | Civil Action No. 9:21-cv-1517-BHH <br><br> **COMPLAINT** <br><br> (Constitutional Rights Violations) <br><br> <u>Non-Jury</u> |

Plaintiff Adams Outdoor Advertising Limited Partnership, a Minnesota limited partnership ("Adams"), by and through its undersigned counsel, for its complaint against Defendants Beaufort County and Eric Greenway, the Director of the Beaufort County Community Development Department (collectively, "Defendants"), avers and alleges as follows:

## INTRODUCTION

1. Adams brings several facial constitutional challenges against Defendant Beaufort County's Community Development Code ("CDC"), specifically a portion of Division 5.6, *et seq.*, relating to Signs (the "Sign Ordinance"). Adams also (and separately) challenges the manner in which Defendants have applied the Sign Ordinance. Adams seeks, among other things, declaratory relief, injunctive relief, and money damages based on the deprivation, under color of state law, of rights guaranteed to Adams by the United States Constitution, the South Carolina Constitution, and 42 U.S.C. § 1983.

## PARTIES, JURISDICTION, AND VENUE

2. Adams is a limited partnership formed under the laws of the State of Minnesota, with local offices within the State of South Carolina in the Cities of North Charleston and Florence

and Town of Ridgeland. Adams' principal place of business is located in the State of Michigan. None of the general or limited partners of Adams is a citizen of South Carolina.

3.      Defendant Beaufort County (the "County") is a political and governmental subdivision duly organized and existing pursuant to the laws of the State of South Carolina, with its governmental offices located at 100 Ribaut Road, Beaufort, South Carolina 29902.

4.      Defendant Eric Greenway (the "Director") is an individual who, upon information and belief, resides in the County, is the Director of the County's Community Development Department and Interim County Administrator, and acted in concert with the County and/or County officials with respect to the allegations contained herein (where appropriate, the County and the Director shall be referred to collectively as "Defendants").

5.      Any and all actions taken by the County and/or the Director as detailed herein, were taken under the color of state law for purposes of 42 U.S.C. § 1983.

6.      The most substantial events or omissions giving rise to Adams' claims occurred in Beaufort County, South Carolina.

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Diversity jurisdiction exists because Adams and Defendants are citizens of different states.

8.      This Court has jurisdiction over Adams' constitutional claims and civil rights claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(3) and (4).

9.      Venue in this Court is proper under 28 U.S.C. § 1391 because, *inter alia*, one or more Defendants reside in this judicial district, a substantial part of the events or omissions giving rise to Adams' claims occurred in this judicial district, and the property that is the subject of this action is situated this judicial district.

10.     This case is appropriately assigned to the Beaufort Division of the District of South Carolina, pursuant to Local Civil Rule 3.01(A)(1) (D.S.C.), because a substantial part of the events or omissions giving rise to the claim occurred, and Defendants conducted business relating to the events or omissions alleged, in Beaufort County, South Carolina, which is included in the Beaufort Division of the District of South Carolina.

## FACTUAL BACKGROUND

11.     Adams repeats, realleges, and incorporates herein by reference each and every allegation contained above as if fully set forth herein verbatim.

12.     At all relevant times, Adams has been engaged in all aspects of the outdoor advertising business, including but not limited to the sale/lease of billboard space, and the securing of real property and property rights (through outright ownership and lease) for use as locations for outdoor advertising, both within and outside the County and the State of South Carolina.

13.     Adams and third-parties who wish to convey messages to others through the use of billboard space enjoy the right to engage in, attempt to engage in, and actually engage in, speech which is protected by Article 1, § 2 of the South Carolina Constitution and the First and Fourteenth Amendments of the United States Constitution—including but not limited to—political speech, social speech, public service speech, other forms of noncommercial speech, and commercial speech, both within and outside the County and the State of South Carolina.

14.     The County regulates signs within the County, including outdoor advertising signs, or billboards, owned or operated by Adams, through the Sign Ordinance.

15.     Generally, certain billboards can be damaged by any winds that approach or exceed thirty-five (35) miles per hour in speed, but typically do not become destroyed or inoperable from one such event unless winds are at the top of or above tropical storm force levels.

16.    Over time, two of Adams' nonconforming billboards located within the County became partially destroyed due to strong winds from multiple storms, as well as other natural forces, such that they had to be repaired.

17.    These billboards each contain two faces, or sides, are located on separate parcels of real property adjacent to US-21/Trask Parkway, which are approx. 0.5 and 0.6 miles north of Parris Island Gateway, respectively, and the billboards were previously assigned permit numbers 06-07-740884 and 06-07-740766, respectively (collectively, the "Billboards"), by the South Carolina Department of Transportation ("SCDOT").

18.    In January and February of 2021, Adams applied to SCDOT for approval to repair each of the Billboards, pursuant to S.C. Code Ann. Regs. 63-350C.(4).

19.    Adams applied using SCDOT's form application for the same, and copies of those applications are attached hereto as **Exhibits A** and **B**.

20.    S.C. Code Regs. 63-350 prescribes maintenance standards for outdoor advertising signs that are controlled by the Highway Advertising Control Act, S.C. Code Ann. § 57-25-110, *et seq.*

21.    The Highway Advertising Control Act governs "the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the rights-of-way of the interstate and federal-aid primary systems within" the State of South Carolina.  S.C. Code Ann. § 57-25-130.

22.    SCDOT has the authority to issue permits for the construction and maintenance of such signs.  *See* S.C. Code Ann. § 57-25-110, *et seq.*

4

23. US-21/Trask Parkway, the road which the Billboards are adjacent to, is maintained by SCDOT as an interstate or federal-aid primary system, as those terms are defined in the Highway Advertising Control Act.

24. Subpart C. of S.C. Code Ann. Regs. 63-350 sets forth maintenance requirements for nonconforming billboard signs controlled by the Highway Advertising Control Act.

25. As used therein, Chapter 63 of the South Carolina Code of Regulations defines "Department" as the South Carolina Department of Transportation.

26. S.C. Code Ann. Regs. 63-350C.(4) provides:

In the event a nonconforming device is partially destroyed by wind or other natural forces including tornadoes, hurricanes, or other catastrophic occurrences, **the Department must determine whether to allow the sign to be rebuilt**. If the Department determines that the damage to the sign was greater than 50 percent of its replacement costs as determined by nationally recognized catalogues of vendors of construction and outdoor advertising materials as of the time of the damage, the sign must be dismantled at no cost to the Department and may not be erected again. A current issue of the catalogue or advertisement indicating materials to be replaced must be submitted with the request to rebuild. Salvage parts cannot be used to determine replacement value unless approved by the Department.

S.C. Code Ann. Regs. 63-350C.(4) (emphasis added).

27. Pursuant to South Carolina statutory and regulatory law, SCDOT holds the authority to decide whether partially destroyed outdoor advertising signs adjacent to interstate or federal-aid primary system may be rebuilt or repaired. *See* S.C. Code Ann. Regs. 63-350C.(4), and S.C. Code Ann. § 57-25-110, *et seq.*

28. SCDOT approved Adams' requests to repair the Billboard assigned permit number 06-07-740766 by letter dated February 3, 2021, and the Billboard assigned permit number 06-07-740884 by letter dated March 3, 2021 (the "SCDOT Approvals").

29.    In issuing said approvals, SCDOT determined that the damage to the Billboards was less than fifty percent (50%) of the replacement cost of the sign structure, in accordance with the objective criteria of S.C. Code Ann. Regs. 63-350C.(4).

30.    In early April of 2021, Adams e-mailed the Beaufort County Code Enforcement Department's ("Code Enforcement") Director, and notified her of the repair work it would be performing on April 9, 2021 to the Billboards.

31.    Adams attached copies of the SCDOT Approvals to repair the Billboards, as well as copies of the Billboards' permits, to that email.  Copies of these documents sent to Code Enforcement are attached hereto as **Exhibit C**.

32.    Contrary to the provisions of CDC Sec. 5.6.50.E., which relates to maintenance and repair of Off-Premises Signs, the Director advised Adams that Beaufort County's Planning and Zoning Department would have to review the sign repair work.

33.    Because SCDOT, the governing body, had approved the repairs to the Billboards, and the County asked Adams to seek approvals from persons or entities not required under the CDC, Adams proceeded with its work.

34.    On April 10, 2021, the Director emailed Adams, copying County officials, including the County Attorney and a Deputy County Attorney.  The Director alleged therein that the SCDOT Approvals for the repair work did not constitute proper authorization.  A copy of this correspondence is attached hereto as **Exhibit D**.

35.    In that email, the Director arbitrarily characterized Adams' work as an unauthorized "complete rebuild" and "reconstruct[ion]," and ordered Adams to cease and desist from any additional work on the Billboards.  Therein, the Director did not cite to any code or ordinance which Adams was purportedly violating.  *See* Ex. D.

36.     On April 11, 2021, Adams' General Counsel, Richard Zecchino ("Zecchino"), replied to the Director's email, advising that SCDOT's determination to approve the work was controlling and granted proper authorization for the work.  *See id*.

37.     Zecchino further advised that Adams intended to complete the SCDOT-approved work on the Billboards that day.

38.     Following this email exchange, Code Enforcement issued a Stop Work Order, dated April 12, 2021, a copy of which is attached hereto as **Exhibit E** (the "Stop Work Order").

39.     The County included a copy of CDC Sec. 5.6.50, setting forth standards for Off-Premises Signs (the "Off-Premises Signs Ordinance"), with the Stop Work Order.  *See* Ex. E.

40.     The Stop Work Order is addressed to Adams Outdoor Advertising, Inc., which is not the proper entity, and states therein:

> It has been determined that to [sic] pursuant to Beaufort County Ordinance- 5.6.50 Off-Premises Sign Standards E. Maintenance Standards for Off-Premises Signs, the required Beaufort county approval was not granted for the work and/or repairs to billboards 7036/74062 and 74065/70091 located on Trask Parkway in Beaufort County.  Accordingly, it is hereby ordered that the Owner and/or agent shall cease and desist from any further activity on these sites.

*Id*.

41.     The Stop Work Order does not state a specific provision of the CDC which Adams allegedly violated, as Sec. 5.6.50.E. addresses numerous maintenance and repair related issues.

42.     Indeed, maintenance and repair of off-premises signs performed under subparts 1. and 2. of CDC Sec. 5.6.50.E. do not require the approval of the County or Director, or any other entity or person within the County.

43.     The Stop Work Order does not identify the person or entity that made a determination that proper approval was not granted for the work and/or repairs.  *See* Ex. E.

44.    The Stop Work Order does not properly identify the off-premises Billboards at issue, as Adams did not perform any repair work to one of the Billboards' faces, or sides, ascribed or referred to as number 74062.  *See id.*

45.    Because the Stop Work Order does not define "Owner," nor the "sites" in question, it is not clear who must cease and desist from further activity, and which property is the subject of the order.  *See id.*

46.    On the same date of the Stop Work Order, April 12, 2021, the County issued two Uniform Ordinance Summons' to Adams, presumably one for each Billboard, for alleged violation(s) of CDC Sec. 5.6.50.E.

47.    These documents direct Bo Hodges ("Hodges"), a Real Estate Manager at Adams, to appear for hearings on May 5, 2021 before the Beaufort County Magistrate.  Copies of the documents are attached hereto as **Exhibit F** (the "Citations").

48.    The trial date for the alleged violations was later rescheduled to June 9, 2021.

49.    Both the Stop Work Order and the Citations are void and unenforceable, as they are in conflict with South Carolina law, seek to preempt a state agency's decision, are vague and ambiguous, and are based upon an unconstitutional County ordinance, CDC Section 5.6.50.E.4.c.

50.    CDC Section 5.6.50.E.4.c. (hereinafter, the "Ordinance") seeks to regulate repair standards for Off-Premises Signs that are partially destroyed by wind or other natural forces.  *See* CDC Sec. 5.6.50.E.4.c.

51.    Specifically, the Ordinance provides:

If a sign is partially destroyed by wind or other natural forces, the Director must determine whether to allow the sign to be rebuilt.  If the Director determines that the damage to the sign was greater than 50 percent of its replacement cost as of the time of the damage, the sign must be consistent with all current requirements of this chapter.

*Id.*

8

52.     As used therein, the CDC defines "Director" as the Director of the County's Community Development Department.  *See* CDC Sec. 10.1.40.

53.     Pursuant to CDC Sec. 5.6.50.E., any structural or other substantive maintenance to an off-premises sign renders the permit for such sign void, and the sign must be removed at the sign owner's cost.  *See* CDC Sec. 5.6.50.E.2.

54.     Nonconforming signs, such as the Billboards, are permitted if they pre-exist relevant regulations, even though they do not conform to the requirements of the Highway Advertising Control Act and/or local zoning regulations.

55.     As such, nonconforming billboards may never be rebuilt on their existing land parcels if requests to the Director for the same are denied.

56.     The Ordinance is unconstitutional in that it gives the Director unbridled discretion to determine whether to allow a sign to be rebuilt or repaired, and is an unconstitutional prior restraint as it does not contain any time limitation for the Director to make such a decision.

57.     There is a history of bias and animosity by the County to Off-Premises Signs, with its ultimate goal being the elimination of such signs within the County.

58.     Upon information and belief, the Director and/or other County officials provided a non-profit group, Sea Island Corridor Coalition Inc. (the "Coalition"), with photos and videos of Adams' subject work on the Billboards.  On May 3, 2021, the Coalition sent out an email blast to its subscribers, which contained the headline "Adams Outdoor Illegally Re-Builds Two Billboards on Trask Parkway."  A copy of the Coalition's email is attached hereto as **<u>Exhibit G</u>**.

59.     This supposed "news" update from the Coalition contains a multitude of factual inaccuracies, and a link to a video available on YouTube of Adams performing some of the work, which, upon information and belief, was recorded by the Director.  *See* Ex. G.

60.    Historically, the County has repeatedly advised Adams that it would not be permitted to perform the type of work necessary to repair or rebuild partially destroyed signs.

61.    Indeed, while the Off-Premises Sign Ordinance allows the addition of minor modifications to improve hurricane safety, such as "hurricane frames," it outright prohibits repair or replacement of the foundational components of these signs, such as poles that connect the structure's base to the sign face.  *See* CDC Sec. 5.6.50.E.2.

62.    The County only revised the Off-Premises Sign Ordinance to allow for minor modifications to improve hurricane safety after years of Adams' efforts in requesting the same.

63.    The County and the Coalition claim that there is a link between Adams' performance of the repair work at issue, and the difficult process Adams faced in securing the hurricane frame/safety repair language in the CDC.  However, they are completely separate matters and the subject work has no relation to "hurricane frame" installation.

64.    In reality, the Stop Work Order and Citations are only the most recent examples of the County's and Director's attempts to phase outdoor advertising signs out of existence in the County.

## FOR A FIRST CAUSE OF ACTION
### (FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF THE ORDINANCE AS A VIOLATION OF SOUTH CAROLINA LAW)

65.    Adams repeats, realleges, and incorporates herein by reference each and every allegation contained above as if fully set forth herein verbatim.

66.    As set forth hereinabove, South Carolina statutory and regulatory law dictate that SCDOT is the authoritative body in deciding whether partially destroyed billboards adjacent to interstate or federal-aid primary system may be rebuilt or repaired.  *See* S.C. Code Ann. Regs. 63-350C.(4), and S.C. Code Ann. § 57-25-110, *et seq.*

67.     The Billboards are adjacent to such a roadway, US-21/Trask Parkway.

68.     S.C. Code Ann. Regs. 63-350C.(4) provides:

In the event a nonconforming device is partially destroyed by wind or other natural forces including tornadoes, hurricanes, or other catastrophic occurrences, the Department must determine whether to allow the sign to be rebuilt. If the Department determines that the damage to the sign was greater than 50 percent of its replacement costs as determined by nationally recognized catalogues of vendors of construction and outdoor advertising materials as of the time of the damage, the sign must be dismantled at no cost to the Department and may not be erected again. A current issue of the catalogue or advertisement indicating materials to be replaced must be submitted with the request to rebuild. Salvage parts cannot be used to determine replacement value unless approved by the Department.

S.C. Code Ann. Regs. 63-350C.(4).

69.     S.C. Code Ann. Regs. 63-350C.(4) sets forth objective standards by which SCDOT is to determine whether to allow a partially destroyed outdoor advertising sign to be rebuilt or repaired.

70.     SCDOT is an agency of the government of the State of South Carolina.  *See* S.C. Code Ann. § 57-1-20.

71.     The County's Ordinance provides:

If a sign is partially destroyed by wind or other natural forces, the Director must determine whether to allow the sign to be rebuilt.  If the Director determines that the damage to the sign was greater than 50 percent of its replacement cost as of the time of the damage, the sign must be consistent with all current requirements of this chapter.

CDC Sec. 5.6.50.E.4.c.

72.     The Ordinance, on its face, is in conflict with South Carolina law, in that attempts to vest power in the Director to determine whether to allow a partially destroyed outdoor advertising sign to be rebuilt or repaired.

73.     The Ordinance requires the Director to form a subjective personal opinion, exercise judgment, or otherwise perform a subjective or ad hoc determination regarding whether damage to an outdoor advertising sign is greater than fifty percent (50%) of the sign's replacement value.

74.     The Ordinance requires the Director to form a subjective personal opinion, exercise judgment, or otherwise perform a subjective or ad hoc determination regarding whether to allow a damaged sign to be rebuilt.

75.     The remainder of the Sign Ordinance does not provide any objective criteria by which to make such decisions.

76.     On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 66 through 75 (inclusive) of this Complaint, is in conflict with South Carolina law and therefore unconstitutional.

77.     By conflicting with State law, the Ordinance arbitrarily deprives, and/or attempts to deprive, Adams (and those similarly situated to Adams) of its vested property rights.

78.     By conflicting with State law, the Ordinance is arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of Adams' (and those similarly situated to Adams) vested property rights/interests without due process of law.

79.     By conflicting with State law, the Ordinance violates Adams' (and those similarly situated to Adams) civil rights.

**FOR A SECOND CAUSE OF ACTION**
**(FACIAL VAGUENESS/PROCEDURAL DUE PROCESS AND OVERBREADTH**
**CHALLENGE TO THE CONSTITUTIONALITY OF THE ORDINANCE)**

80.     Adams repeats, realleges, and incorporates herein by reference each and every allegation contained above as if fully set forth herein verbatim.

81.     The Ordinance provides:

If a sign is partially destroyed by wind or other natural forces, **the Director must determine** whether to allow the sign to be rebuilt.  **If the Director determines** that the damage to the sign was greater than 50 percent of its replacement cost as of the time of the damage, the sign must be consistent with all current requirements of this chapter.

CDC Sec. 5.6.50.E.4.c. (emphasis added).

82.    Pursuant to the Ordinance, the Director must form a subjective personal opinion, exercise judgment, or otherwise perform a subjective or ad hoc determination regarding whether damage to an outdoor advertising sign is greater than fifty percent (50%) of the sign's replacement value.

83.    Pursuant to the Ordinance, the Director must form a subjective personal opinion, exercise judgment, or otherwise perform a subjective or ad hoc determination regarding whether to allow a partially destroyed Off-Premises Sign to be rebuilt.

84.    The remainder of the Ordinance does not provide any objective criteria by which to make such decisions.

85.    On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 81 through 84 (inclusive) of this Complaint, is vague, ambiguous, and/or overbroad, and does not provide fair notice to Adams (and those similarly situated to Adams) of the conduct proscribed.

86.    On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 81 through 84 (inclusive) of this Complaint, confers on the Director the sole, unstructured, unlimited, and/or unbridled discretion to determine whether to allow an off-premises sign to be rebuilt or repaired.

87.    On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 81 through 84 (inclusive) of this Complaint, confers on the Director the sole, unstructured, unlimited, and/or unbridled discretion to determine matters such as whether a

condition has been satisfied, and/or whether to permit or deny constitutionally protected speech and/or conduct.

88.    On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 81 through 84 (inclusive) of this Complaint, is vague, ambiguous, and/or overbroad, and does not provide fair notice to Adams (and those similarly situated to Adams) of when a permit or authorization may be necessary to engage in constitutionally protected speech and/or conduct.

89.    On its face, the Ordinance, as it relates to any one, more, or all of the matters detailed in Paragraphs 81 through 84 (inclusive) of this Complaint, confers on the Director unstructured, unlimited, and/or unbridled discretion to determine when a permit is necessary to engage in constitutionally protected speech and/or conduct.

90.    On its face, the Ordinance lacks any time period under which the Director must act on an application or request to repair or rebuild and, therefore, also confers on the Director unstructured, unlimited, and/or unbridled discretion to determine when to so act.

91.    By being vague, ambiguous, and/or overbroad, the Ordinance violates the South Carolina Constitution, including but not limited to Article 1, §§ 2 and 3.

92.    By being vague, ambiguous, and/or overbroad, the Ordinance violates the United States Constitution, including but not limited to the First and Fourteenth Amendments.

93.    By being vague, ambiguous, and/or overbroad, the Ordinance arbitrarily deprives, and/or attempts to deprive, Adams (and those similarly situated to Adams) of its vested property rights.

94.     By being vague, ambiguous, and/or overbroad, the Ordinance is arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of Adams' (and those similarly situated to Adams) vested property rights/interests without due process of law.

95.     By being vague, ambiguous, and/or overbroad, the Ordinance violates Adams' (and those similarly situated to Adams) civil rights.

### FOR A THIRD CAUSE OF ACTION
### (FACIAL CHALLENGE TO THE CONSTITUTIONALITY
### OF THE ORDINANCE AS A PRIOR RESTRAINT)

96.     Adams repeats, realleges, and incorporates herein by reference each and every allegation contained above as if fully set forth herein verbatim.

97.     The Ordinance attempts to regulate how and when one needs to obtain a permit or authorization with respect to a sign or a message.

98.     For the reasons stated in the first cause of action of this Complaint, and by virtue of the language used in the Ordinance, the Ordinance fails to set forth neutral criteria, such as narrow, objective, and definite standards, to insure that a permitting, licensing, or revocation decision by the Town and/or Director with respect to a sign is not based on the content or viewpoint of the speech or message.

99.     For the reasons stated in this Complaint, and by virtue of the language used in the Ordinance, the Ordinance fails to create a permitting or licensing scheme that reduces the Director's act of granting, denying, or revoking a permit or license with respect to a sign to a ministerial one, without the exercise of judgment or the formation of an opinion by the Director.

100.    For example, **and not by way of limitation**, the Ordinance lacks all of the following:

    a.     clearly defined—*i.e.*, not vague or overbroad—terms;

b.      any clearly defined limits on the time within which the decisionmaker must issue a permit, license, or other authorization;

c.      any clearly defined limits on the time within which the decisionmaker must deny a permit, license, or other authorization;

d.      any requirement that a decision on a permit, license, or other authorization be made within a specified brief period;

e.      any additional reasons why a decisionmaker could issue, deny, or revoke a permit, license, or other authorization;

f.      any requirement that the decisionmaker clearly explain his or her reasons for issuing, denying, or revoking a permit, license, or other authorization;

g.      any guarantee of prompt judicial review of a decision denying or revoking a permit, license, or other authorization; and/or

h.      any requirement that the status quo be maintained during any period of review.

101.    The Ordinance lacks any procedural safeguards or neutral criteria of any type with respect to permitting, licensing, or authorizing the repair or rebuild of signs.

102.    The Ordinance gives the Director unbridled and/or boundless discretion to determine whether to permit or deny expressive activity.

103.    The Ordinance leaves the decision whether to grant, deny, or revoke a permit, license, or other authorization, and the time period in which to do so, to the whim of the Director.

104.    As an unconstitutional prior restraint, the Ordinance violates the South Carolina Constitution, including but not limited to Article 1, § 2.

105.    As an unconstitutional prior restraint, the Ordinance violates the United States Constitution, including but not limited to the First and Fourteenth Amendments.

106.    As an unconstitutional prior restraint, the Ordinance arbitrarily deprives, and/or attempts to deprive, Adams (and those similarly situated to Adams) of its vested property rights.

107.    As an unconstitutional prior restraint, the Ordinance is arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of Adams' (and those similarly situated to Adams) vested property rights/interests without due process of law.

108.    As an unconstitutional prior restraint, the Ordinance violates Adams' (and those similarly situated to Adams) civil rights.

## FOR A FOURTH CAUSE OF ACTION
### ("AS APPLIED" CHALLENGE TO THE CONSTITUTIONALITY OF THE ORDINANCE AND/OR DEFENDANTS' ACTIONS WITH RESPECT TO ADAMS)

109.    Adams repeats, realleges, and incorporates herein by reference each and every allegation contained above as if fully set forth herein verbatim.

110.    The Director, in ordering Adams to cease and desist from its repair work to the Billboards, and causing the issuance of the Stop Work Order and Citations, is using unstructured, unlimited, and/or unbridled discretion in applying the Ordinance with respect to and against Adams.

111.    As detailed herein, Defendants have exhibited a pattern of bias and hostility towards Adams, and its business interests and property rights, which has manifested itself in the manner in which Defendants have applied the Ordinance with respect to and against Adams.

112.    As applied by Defendants with respect to and against Adams, the Ordinance is vague, ambiguous, and/or overbroad and does not provide fair notice to Adams of the conduct proscribed or when a permit or authorization is necessary.

113.    Defendants are using unstructured, unlimited, and/or unbridled discretion in interpreting and applying the Ordinance with respect to and against Adams.

114.    Defendants' disparate treatment of Adams under the Ordinance violates the South Carolina Constitution, including but not limited to Article 1, § 3.

115.    Defendants' disparate treatment of Adams under the Ordinance violates the United States Constitution, including but not limited to the Equal Protection Clause of the Fourteenth Amendment.

116.    Defendants' disparate treatment of Adams under the Ordinance is arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of Adams' vested property interests without due process of law.

117.    As applied by Defendants with respect to and against Adams, the Ordinance impinges on freedoms guaranteed by the United States Constitution, including but not limited to the First and Fourteenth Amendments.

118.    As applied by Defendants with respect to and against Adams, the Ordinance impinges on freedoms guaranteed by the South Carolina Constitution, including but not limited to Article 1, § 2.

119.    As applied by Defendants with respect to and against Adams, the Ordinance violates Adams' civil rights.

120.    As applied by Defendants with respect to and against Adams, the Ordinance deprives Adams of its vested property rights.

121.    As a direct and proximate result of the County's and Director's actions as detailed throughout this Complaint, Adams has suffered (and will continue to suffer) damage.

122.    As a direct and proximate result of the County's and Director's actions as detailed throughout this Complaint, Adams has suffered (and will continue to suffer) irreparable harm because, *inter alia*, it has been deprived of rights granted to it under the United States Constitution and South Carolina Constitution, including important and vested property rights and the right to engage in protected speech, and is subject to penalties and fines for any alleged violation of the Ordinance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Adams Outdoor Advertising Limited Partnership respectfully requests that this Honorable Court:

(a)    declare that the County's Ordinance (or portions thereof) violates the United States Constitution, including but not limited to the First and Fourteenth Amendments, and the South Carolina Constitution, including but not limited to Article 1, § 2, on its face by being in conflict with State law, and is therefore invalid and unenforceable;

(b)    declare that the County's Ordinance violates the United States Constitution, including but not limited to the First and Fourteenth Amendments, and the South Carolina Constitution, including but not limited to Article 1, § 2, on its face by being vague, ambiguous, overbroad, and/or a violation of Procedural Due Process, and is therefore invalid and unenforceable;

(c)    declare that the County's Ordinance violates the United States Constitution, including but not limited to the First and Fourteenth Amendments, and the South Carolina Constitution, including but not limited to Article 1, § 2, on its face as a prior restraint, and is therefore invalid and unenforceable;

(d)    declare that the County's Ordinance violates Adams' (and those similarly situated to Adams) civil rights—including but not limited to those rights protected by 42 U.S.C. § 1983—and is therefore invalid and unenforceable;

(e)    declare that the manner in which Defendants are interpreting and applying the Ordinance with respect to and against Adams, violates the United States Constitution and the South Carolina Constitution;

(f)    declare that the manner in which Defendants are interpreting and applying the Ordinance with respect to and against Adams violates Adams' civil rights—including but not limited to those rights protected by 42 U.S.C. § 1983;

(g)    preliminarily and permanently enjoin the County and the Director from enforcing the Ordinance and from issuing any civil fines and/or penalties to Adams (or those similarly situated to Adams) for a past, present, or future purported violation thereof;

(h)    declare that the Stop Work Order and Citations are null and void;

(i)    award damages to Adams for the violation of its rights—including but not limited to those rights protected by 42 U.S.C. § 1983—as detailed herein;

(j)    award Adams its costs and fees (including reasonable attorney's fees) pursuant to 42 U.S.C. § 1988; and

(k)    grant such further, additional, and/or other relief as this Court may deem equitable, just, and/or appropriate.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

 s/    Evan P. Williams
Jeffrey S. Tibbals            Fed ID No. 9387
Email: jst@bybeetibbals.com
Evan P. Williams             Fed ID No. 12771
Email: ewilliams@bybeetibbals.com
BYBEE & TIBBALS, LLC
735 Johnnie Dodds Blvd., Suite 104 (29464)
P.O. Box 1542
Mt. Pleasant, SC 29465
843.881.1623

*ATTORNEYS FOR PLAINTIFF ADAMS
OUTDOOR ADVERTISING LIMITED
PARTNERSHIP*

May 20, 2021
Mt. Pleasant, South Carolina