UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>BEAUFORT COUNTY, ERIC GREENWAY, Beaufort County Administrator, and HILLARY AUSTIN, Zoning and Development Administrator for Beaufort County,<br><br>Defendants. | Civil Action No. 9:21-1517-BHH<br><br><br><br>**OPINION AND ORDER** |

Before the Court is the amended complaint filed by Plaintiff Adams Outdoor Advertising Limited Partnership ("Plaintiff" or "Adams") against Defendants Beaufort County, its County Administrator (Eric Greenway), and its Zoning and Development Administrator (Hillary Austin) (collectively, "Defendants" or the "County"). Adams owns commercial billboards in Beaufort County, and brought this suit in May 2021 to challenge various parts of the County's sign regulations, which are contained within the County's Community Development Code ("CDC").

The County moved to dismiss (ECF No. 24) Adams's amended complaint under the *Younger* abstention doctrine and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Adams filed a response (ECF No. 27), and the County filed a reply (ECF No. 31). Defendants submitted a notice of supplemental authority (ECF No. 34) applying the U.S. Supreme Court's recent decision in *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464 (2022). For the reasons set forth below, the Court grants the County's

motion and dismisses the amended complaint.

## BACKGROUND

The dispute between Adams and the County arises from two events. First, in April 2021, the County cited Adams for rebuilding two of its billboards in contravention of County sign regulations. The Beaufort County Magistrate's Court held a trial on those criminal charges in July 2021 and found Adams and one of its managers guilty. Since that time, the County and Adams have been litigating the validity of the convictions in state court.

Second, on May 27 and June 1, 2021, Adams applied to install eleven new digital commercial billboards in Beaufort County. The County denied the permits, and Adams appealed. The Beaufort County Zoning Board of Appeals ultimately upheld the decision to deny the applications because the proposed signs did not comply with long-standing height and width standards. (ECF No. 27-2 at 4.) Adams has not challenged those dimension standards.

Adams filed its amended complaint on July 15, 2021. In Counts 1, 3, 5, and 8, Adams challenges the constitutionality of the County's sign ordinance regulations that govern the maintenance and repair of billboards. Those are the regulations at issue in state court.

In counts 2, 4, 6, 7, and 9, Adams challenges various sign regulations as they existed before May 24, 2021 (*i.e.*, the "Former Sign Code"). On May 24, the County passed on first reading Ordinance 2021/32 that revised and amended many sign regulations. (ECF No. 24-2 at 1.) The ordinance was advertised for a public hearing on May 25 (ECF No. 24-3; ECF No. 31-1 ¶ 7), and adopted in July 2021 (ECF No. 24-2 at 1). Because those amendments (*i.e.*, the "Current Sign Code") were legally pending on May 25 under South

2

Carolina's "pending ordinance doctrine"[1], the County applied the Current Sign Code when it denied Adams's May 27 and June 1 applications. Adams's challenges, however, are against parts of the Former Sign Code that either were not used to deny its sign permits, or that have been changed by the Current Sign Code.

The County's motion to dismiss argues that Adams's claims about its reconstructed billboards are barred by the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny. The County is enforcing those provisions against Adams via criminal citations in state court, where Adams may raise its constitutional challenges. Adams agrees that *Younger* abstention applies to counts 1, 3, 5, and 8, so it does not oppose that basis for dismissal.

The County also argues that Adams's remaining challenges to repealed or amended sign regulations are moot and that Adams lacks standing to challenge regulations that have not been applied against it. Adams opposes dismissal of those claims. It argues that the County should have applied the Former Sign Code provisions to its sign permit applications. It also argues that the similarity between Former Sign Code provisions *not applied* to Adams and Current Sign Code provisions prevent the former from being moot. Finally, Adams argues that it has standing to challenge the Sign Code because its sign business is subject to sign regulations.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for mootness and for lack of standing, both of which go to subject matter jurisdiction. *CGM, LLC v.*

---

[1] *Covenant Media of SC, LLC v. City of North Charleston*, 493 F.3d 421, 438 (4th Cir. 2007); *Sherman v. Reavis*, 257 S.E.2d 735, 737 (S.C. 1979). A land use ordinance is considered legally pending when the governing body has resolved to consider the ordinance and has advertised to the public its intention to hold a public hearing. *Covenant Media*, 493 F.3d at 438.

3

*BellSouth Telecomm., Inc.,* 664 F.3d 46, 52 (4th Cir. 2011). "Article III gives federal courts jurisdiction only over cases and controversies, and standing is an integral component of the case or controversy requirement." *Id.* (cleaned up). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three "irreducible minimum requirements" of Article III standing:

> (1) an injury-in-fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (cleaned up).

## DISCUSSION

### I. The parties agree that *Younger* abstention applies to counts 1, 3, 5, and 8.

In the motion to dismiss, the County argues that Adams's challenges to its regulations for preexisting billboard signs (in CDC § 5.6.50) should be dismissed under the *Younger* abstention doctrine because the County is enforcing those regulations against Adams in state court, where Adams can raise its constitutional claims as defenses. *See generally, Younger v. Harris*, 401 U.S. 37, 41 (1971); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982); *New Orleans Pub. Services, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989). Adams consents, and agrees to dismissal of counts 1, 3, 5, and 8. (ECF No. 27 at 7–8.)

Because the *Younger* doctrine directs this Court to abstain, the Court grants the motion to dismiss those counts.

4

## II. Adams's remaining claims are dismissed for lack of justiciability.

After a thorough review of the parties' arguments and the applicable law, the Court agrees with the County that Adams's other claims in the amended complaint should be dismissed.

### A. Mootness

First, as the County points out in its motion, counts 2, 4, 6, 7, and 9 of Adams's amended complaint challenge provisions of the Former Sign Code that are no longer in effect. These had no impact on Adams's sign permit applications because the County denied the applications based on the Current Sign Code. The Court therefore dismisses Adams's challenges to the Former Sign Code as moot.

"Mootness is primarily a function of the Article III 'case or controversy' limitation on the jurisdiction of the Federal courts." *American Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A case challenging a repealed ordinance should be dismissed where there appears to be little practical likelihood that the challenged ordinance will be reenacted. *Id.* at 606. The key to the mootness determination is not whether reenactment of the challenged law is within the power of the legislature, but whether reenactment appears to be likely. *Id.*; *Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002) (holding that challenge to repealed ordinance was moot because there was "no reasonable expectation" that the city would reenact it). A claim is moot if it challenges a law that has been amended or repealed. *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006).

Adams's second cause of action is a facial challenge to the constitutionality of the Sign Ordinance. Adams challenges the constitutionality of (1) CDC § 5.6.10.A; (2) CDC § 5.6.10.B.4; (3) CDC § 5.6.20; (4) CDC § 5.6.30.C.1.f.; (5) CDC § 5.6.50; and (6) CDC

5

§ 5.6.60. Except for § 5.6.60—which Adams lacks standing to challenge, as explained below—these provisions were significantly altered in the Current Sign Code. Adams's challenges to them are thus moot.

Adams's only reference to CDC § 5.6.10.A. occurs in paragraph 115, in which Adams alleges that "the Sign Ordinance states that its purpose is 'to establish regulations for commercial and non-commercial signage.'" (ECF No. 16 at 23.) The Current Sign Code does not contain this language either in § 5.6.10.A. or anywhere else. (ECF No. 24-2 at 2, CDC § 5.6.10.A.1.) This challenge to language that does not exist in the Current Sign Code is moot.

Similarly, Adams cites CDC § 5.6.10.B.4 in paragraph 121 to argue that "The Sign Ordinance, on its face, regulates signs that are exempt from the Sign Ordinance based upon the content of the message and the intent of the speaker." (ECF No. 16 at 24.) But while the Former Sign Code exempted fourteen different types of signs from regulation, the Current Sign Code exempts only signs owned or required by the government. (ECF No. 24-2 at 3, CDC § 5.6.10.B.4.) Adams's challenge based on exemptions in the Former Sign Code is moot.

Next, Adams contends in paragraph 118 that the sign ordinance regulates Commercial Billboard Signs and Pole Signs "based on the content of the message and the intent of the speaker . . . ." (ECF No. 16 at 23.) However, while the Current Sign Code still prohibits Off-Premises Signs / Commercial Billboard Signs ("OPS/CBS"), the regulation is based on a new definition of that term. (ECF No. 24-2 at 5, 60, CDC § 5.6.20, CDC § 10.1.150.) Thus, Adams's challenge to CDC § 5.6.20 in the Former Sign Code is moot.

In paragraph 122, Adams contends that CDC § 5.6.30.C.1.f. regulates "LED Message board signs" based on the content of the message and the intent of the speaker. (ECF No. 16 at 24.) But the Current Sign Code does not refer to LED Message board signs. Adams's claim is moot because the challenged term is not used in the Current Sign Code.

The bulk of Adams's second cause of action (¶¶ 114, 116–17, 119–20, 124–31) is devoted to challenging CDC § 5.6.50 concerning Off-Premises Sign Standards. (ECF No. 16 at 22–26.) Some of Adams's challenges refer to terms that no longer exist in CDC § 5.6.50, such as "Non-Commercial Off-Premises Signs" (¶¶ 114, 119, 127, 128). Other challenges are lodged against *provisions* that no longer exist in the CDC, such as § 5.6.50.C.1 (¶ 120.a.), § 5.6.50.D.1 (¶ 120.b.), and § 5.6.50.D.2 (¶ 120.c.). Accordingly, Adams's challenges to these terms and provisions that do not exist in the Current Sign Code are moot.

Moreover, as the Current Sign Code contains a new definition of OPS/CBS, Adams's challenges to "Off-Premises Signs" and "Commercial Off-Premises Signs" in paragraphs 114, 116–17, 120.d, and 124–131 are also moot.

In its fourth cause of action, Adams brings facial vagueness challenges to various terms that no longer appear in the Current Sign Code, or that have new definitions. (ECF No. 16 at 29–41.)

Paragraph 150 attacks the former "Directional Signs" definition, but the Current Sign Code defines that term differently. (ECF No. 24-2 at 11, CDC § 5.6.40.) The challenge to the old term is moot.

In paragraphs 160–65, Adams challenges the Former Sign Code for not defining

7

such terms as "On-Premises Sign" (¶ 160), "Off-Premises Sign" (¶ 161), "Commercial Off-Premises Sign" (¶ 162), "Non-Commercial Off-Premises Sign" (¶ 163), "Commercial Billboard Sign" (¶ 164), and "LED Message Board Sign" (¶ 165). But the terms "On-Premises Sign," "Off-Premises Sign," and "Commercial Billboard Sign" are defined in the Current Sign Code, while the other terms no longer exist in the CDC. (ECF No. 24-2 at 52, 60, CDC § 10.1.30, CDC § 10.1.150.) Thus, paragraphs 160–65 are moot.

Adams's allegation in paragraph 169 is moot because it challenges a provision (CDC § 7.2.40.D) that the Current Sign Code does not contain. The County also entirely revised CDC § 5.6.10.B.4, so Adams's allegation in paragraph 171 about that provision is moot.

Adams alleges in paragraphs 175–78 that the sign ordinance "as it relates to any one, more, or all of the matters detailed in Paragraphs 150 through 174" is unconstitutional under various theories. But paragraphs 150, 160–65, 169, 171, and 174 challenge provisions that are altered in the Current Sign Code, so Adams's allegations in paragraphs 175–78 are moot.

Paragraph 179 challenges provision 7.2.40 of the Former Sign Code for lack of a time period under which the County and/or Director must act on a permit application, but the Current Sign Code requires that the Director issue a decision on a completed application within 30 days. (ECF No. 24-2 at 46, CDC § 7.2.40.C.4.) Thus, paragraph 179 is moot.

Paragraph 181 attacks a ban on "new 'Commercial Billboard Signs,' 'Commercial Pole Signs,' 'Flashing, Animated, or Scrolling Signs,' 'Internally Illuminated Signs,' 'Moving Signs or Signs Having Moving Parts,' and 'Commercial Off-Premises Signs.'" (ECF No. 16 at 40.) But the Current Sign Code does not mention "Commercial Pole Signs"

or "Commercial Off-Premises Signs." (ECF No. 24-2 at 5, CDC § 5.6.20.) Paragraph 181 attacks absent terms, so it is moot.

Adams is non-specific in paragraphs 183–88 as to which provisions it relies on for its claims. But its allegations of unconstitutionality are moot because they are based on Adams's moot allegations against the Former Sign Code in the preceding paragraphs of its pleading.

Adams's sixth cause of action is a facial challenge to the Sign Code as a prior restraint based on the previous version of CDC § 7.2.40. That challenge is moot because Section 7.2.40 in the Current Sign Code has been substantially modified; it specifically limits the time for the Director to make decisions on sign permit applications, and it requires that the Director state detailed grounds for any denial. (ECF No. 24-2 at 46–47, CDC § 7.2.40.A.)

Adams's seventh cause of action is a combination of Equal Protection and Substantive Due Process challenges to the Former Sign Code. (ECF No. 16 at 47–49.) It challenges the regulations of "Off-Premises Signs" in CDC § 5.6.50 based on provisions in the Former Sign Code, and challenges exemptions in CDC § 5.6.10.B.4 that do not exist in the Current Sign Code. (ECF No. 24-2 at 3–4.) Moreover, like the challenges to CDC § 5.6.50 in Adams's fourth cause action, the challenges to "Commercial Off-Premises Signs" in the seventh cause of action are moot because the Current Sign Code uses a new definition of OPS/CBS. (*Id.* at 60, CDC § 10.1.150.)

Finally, allegations in the ninth cause of action depend on the mistaken view that the County applied the Former Sign Code in denying Adams's sign permit applications. Adams alleges, for example, that "Defendants are using unstructured, unlimited, and/or

unbridled discretion in interpreting and applying the Sign Ordinance with respect to Adams." (ECF No. 16 at 52, ¶ 250.) However, because the County applied the Current Sign Code—including the detailed standards and procedures for processing applications contained in CDC § 7.2.40—Adams's allegations in its ninth cause of action are moot.

Adams's response brief argues that its challenges to the Former Sign Code are not moot because the Current Sign Code was not legally pending when it submitted applications on May 27 and June 1. Adams is mistaken. South Carolina's pending ordinance doctrine allows a local government to deny a permit application based on a "pending and later enacted zoning ordinance." *Sherman v. Reavis*, 257 S.E.2d 735, 737 (S.C. 1979). An ordinance is considered legally pending when the government has "resolved to consider" the ordinance and "has advertised to the public its intention to hold public hearings" on it. *Id.* at 737–38; *Covenant Media of SC, LLC v. City of North Charleston*, 493 F.3d 421, 438 (4th Cir. 2007) (holding that an ordinance was legally pending two days before a billboard company applied for sign permits because the city council had held a first reading of the ordinance and had published a notice that it would hold a public hearing).

On May 24, 2021, at a public meeting, the County Council held first reading of Ordinance 2021/32, the Current Sign Code (ECF No. 24-2 at 1). (ECF No. 31-1 ¶ 6.) On first reading, the Council voted 10 to 1 in favor of the amendatory ordinance. (ECF No. 24-2 at 1.)

On May 25, 2021, the County Council published notice and advertised that it would hold a public hearing and second reading of the amendatory ordinance on June 14. (ECF No. 24-3.) Thus, Ordinance 2021/32 was legally pending on May 25, 2021. The County

10

subsequently held its public hearing, and on July 26, 2021 adopted the ordinance. (ECF No. 24-2 at 1.) Because the Current Sign Code was legally pending on May 25, it applied to Adams's applications that were submitted days later. The County was correct to not apply the Former Sign Code.

Throughout its amended complaint, Adams challenges Former Sign Code provisions that were not applied to Adams's applications and that were changed in the Current Sign Code. But challenges to those former provisions do not present a live controversy. *Am. Legion Post 7 of Durham, N.C.*, 239 F.3d at 606. And there is no reasonable expectation that the County will reenact them. *Id.*; *Reyes*, 300 F.3d at 453. Thus, challenges to the Former Sign Code are moot.

### B. Standing

The Court dismisses Adams's challenges to sign code regulations that do not adversely affect Adams's operations because Adams lacks an injury in fact from those regulations.

Standing is a threshold requirement of Article III justiciability. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000); *Covenant Media*, 493 F.3d at 428. "Standing implicates the court's subject-matter jurisdiction and may be challenged in a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 198 (D.S.C. 2019); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). To resolve a motion to dismiss under Rule 12(b)(1), the Court may consider evidence outside the pleadings without converting the motion to a motion for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). The Court

11

applies the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id.*

To establish standing, a plaintiff must show:

(1) an injury in fact, meaning an injury that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct complained of, meaning that the injury is fairly traceable to the defendant's actions; and (3) a likelihood that the injury will be redressed by a favorable decision.

*Covenant Media*, 493 F.3d at 428 (cleaned up). The burden is on the party asserting jurisdiction to "allege facts essential to show jurisdiction. If they fail to make the necessary allegations, they have no standing." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (cleaned up). Standing may not be "inferred argumentatively from averments in the pleadings." *Id.* (quoting *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284 (1883)). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).

The injury-in-fact requirement means that a plaintiff "cannot leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007). So when a billboard company challenges a sign ordinance, the "plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." *Covenant Media,* 493 F.3d at 430. "[A] plaintiff may not attack any provision of an ordinance under which he has not suffered a real injury in fact." *Maverick Media Group, Inc. v. Hillsborough County*, 528 F.3d 817, 822 (11th Cir. 2008). A plaintiff lacks standing to challenge provisions that were never applied to it. *Friends of*

12

*the Earth*, 204 F.3d at 153; *Covenant Media,* 493 F.3d at 428.

The amended complaint criticizes sections that remain in the Current Sign Code, but fails to show how Adams was injured by those provisions. Adams leaves it to the Court to infer standing from its allegations, but standing is not established that way. *FW/PBS, Inc.*, 493 U.S. at 231. Adams's pleadings allege only two bases from which Adams could claim an injury in fact: (1) enforcement of billboard maintenance regulations under CDC § 5.6.50 (which claims are dismissed under *Younger* abstention), and (2) denial of Adams's sign permit applications under the Current Sign Code. Adams's challenges to other parts the Current Sign Code, which have no bearing on these matters, are dismissed for lack of standing.

Specifically, Adams lacks standing to challenge[2] the temporary sign rules in CDC § 5.6.60 because those provisions govern signs of a limited duration (*e.g.*, 30 days at a time). (ECF No. 24-2 at 22–23.) Adams seeks to erect permanent signs, not temporary signs.

Adams lacks standing for claims[3] against various kinds of signs addressed in CDC Table 5.6.40.A. The directional sign regulations in that table of the Current Sign Code apply to signs located within 30 feet of an entrance or exit to an establishment or a parking location. Adams does not show how any of its proposed billboards would implicate those regulations. (ECF No. 24-2 at 11, CDC Table 5.6.40.A.) Similarly, its proposed billboards are not located on sidewalks, so the sidewalk sign regulation in Table 5.6.40.A (ECF No. 24-2 at 14) does not injure Adams.

---

[2] Am. Compl., ECF No. 16 at 24, ¶ 123 (Second Cause of Action); *id.* at 37, ¶ 170 (Fourth Cause of Action).
[3] Am. Compl., ECF No. 16 at 29, ¶¶ 150–51 (Fourth Cause of Action).

Adams also has no injury in fact establishing standing for its challenge[4] to the sign regulations in Table 5.6.40.B. Those regulations apply to yard signs of up to 6 square feet and signs attached to buildings where a business is in a residential area. (ECF No. 24-2 at 18.) Such regulations do not apply to the OPS/CBS that Adams seeks to erect.

Adams also attacks provisions in Table 5.6.40.B concerning signage on commercial buildings, which signs cannot exceed aggregate limits of 40 (or 80) square feet. (ECF No. 24-2 at 18–19.) But Adams wants to erect OPS/CBS on freestanding monopoles, not on commercial buildings. Thus, Adams has no injury from the regulations in Table 5.6.40.B.

The challenges that Adams asserts[5] against CDC § 5.6.30 are also dismissed for lack of an injury in fact. Adams argues against § 5.6.30.D.4, which applies to signs located in buffers (to protect existing trees), and against § 5.6.30.E, which concerns whether the design and materials of a sign meet certain design standards. But Adams has not shown that the OPS/CBS it seeks to erect would implicate either provision. The amended complaint has no facts that put any of Adams's billboards either in a buffer area with existing trees or in violation of the design standards in § 5.6.30.E. Because Adams has not alleged a concrete injury from any of these provisions, Adams lacks standing to challenge them.

Adams's response did not refute any of these observations. Adams instead relied on a generalized version of standing that does not conform to Article III. Adams asserted:

> In the most straightforward terms, Adams owns and operates signs, which are subject to the Sign Ordinance. No matter what sign type it applied for, the provisions regulating every sign type are unconstitutional because the Sign Ordinance is content-based, vague, ambiguous, and overbroad. Therefore, all the content-based, vague, and/or overbroad provisions in the Sign Ordinance have injured Adams since the ordinance's enactment, have chilled Adams' and

---

[4] Am. Compl., ECF No. 16 at 29–34, ¶¶ 152–59 (Fourth Cause of Action).
[5] Am. Compl., ECF No. 16 at 38, ¶¶ 172–73 (Fourth Cause of Action).

14

its clients' commercial and noncommercial speech (while allowing others to speak), have caused Adams substantial damages, and the injuries are redressable by this Court.

(ECF No. 27 at 27.)

Despite this assertion, Adams has not satisfied the requirement that it must show "standing to challenge *each provision* of an ordinance by showing that [Adams] was injured by application of *those provisions*." *Covenant Media*, 493 F.3d at 428 (emphasis added). The Court therefore dismisses Adams claims against the Former Sign Code.

## CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion to dismiss (ECF No. 24). If Adams plans to challenge the Current Sign Code (Ordinance 2021/32), it is granted leave to file a second amended complaint within 14 days of the entry of this order. If no amended pleading is filed within that time, the Court shall enter a separate judgment under Rule 58.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Court

February __7__, 2023
Charleston, South Carolina